(54 App. Div. 275.)

### ROSENTHAL et al. v. WEIR.

(Supreme Court, Appellate Division, First Department. November 9, 1900.)

1. CARRIERS—RECEIPT—STOPPAGE IN TRANSITU.
　　Where a carrier gave a shipper a receipt providing that the carrier acted as forwarder only, and should not be liable for any loss or damage except from fraud or gross negligence, the stipulation did not govern the liability of the carrier for failure to return the goods, when ordered so to do by the shipper, during their transportation.

2. SAME.
　　Where a carrier gave a shipper a receipt reading that the shipper should in no case demand for any loss or damage to the goods a greater sum than $50, unless otherwise expressed or specially insured, such stipulation did not limit the shipper's recovery in an action against the carrier for failing to stop the goods in transitu pursuant to the shipper's order, since the stipulation applied only to the liability of the defendant in connection with the carriage of the goods.

3. SAME—EVIDENCE—CARRIER'S NEGLECT.
　　Where, in an action against a carrier for damages for failing to stop goods in transitu pursuant to the order of the shipper, it appeared that

during the transit the shipper called at the carrier's office, and was informed by the only one present that the goods could be stopped, and the shipper paid for a telegram sent from such office to the company's agent at the destination of the goods, but the goods were delivered to the consignee, it was proper to direct a verdict for plaintiff.

**4. APPEAL—SUBMITTING ISSUES TO COURT—EFFECT.**

Where, at the close of the testimony, neither plaintiff nor defendant asked to go to the jury, but both moved for the direction of a verdict, the determination of the trial judge on disputed questions of fact with sufficient evidence to support such determination was conclusive upon the appellate court.

**5. CARRIERS—STOPPAGE IN TRANSITU—FAILURE—DAMAGES.**

In an action for damages for carrier's failure to stop goods in transitu on the order of the shipper, a portion of the goods having been returned, but the remainder not paid for owing to the insolvency of the consignee, the measure of damages was what plaintiff lost by reason of the delivery of the goods not returned.

**6. APPEAL—JUDGMENT—CORRECTION.**

Where the shipper of goods ordered them to be stopped in transitu by the carrier, which the carrier failed to do, and they were delivered to an insolvent consignee, but a portion was returned by the consignee, and the court inadvertently included the value of the returned goods in a judgment rendered in favor of the shipper against the carrier, on appeal the judgment would not be reversed for the mistake, since the error might be corrected at any time by motion.

Appeal from trial term, New York county.

Action by Abraham S. Rosenthal and another against Levi C. Weir. From a judgment in favor of plaintiffs, defendant appeals. Affirmed.

The action was brought to recover damages for defendant's failure to stop in transit a shipment of merchandise, and prevent delivery thereof to the consignee. The complaint states two causes of action: First, that the plaintiffs delivered to the defendant, in the city of New York, on March 31, 1897, certain goods, valued at $579.23, for shipment to I. Goldsmith & Co., of Dallas, Tex., and thereafter, on April 2, 1897, discovered that the consignees were insolvent, and, while the merchandise was still in the possession of the defendant, directed it to stop the goods, and return them to the plaintiffs, which direction was not obeyed; and, second, that the defendant, on April 2, 1897, while the shipment was still in its possession and control, agreed with the plaintiffs, for a valuable consideration, to return the goods to the plaintiffs, and undertook to do so, but did not comply with its agreement. The answer admitted that the goods were shipped, but alleged that they were received upon a special contract or bill of lading, and that no other agreement was made. Attached to the answer was a copy of the contract referred to, and it provided, among other things, that the express company were forwarders only, not liable for any loss or damage except proved to have occurred from its fraud or gross negligence, and in no event should the shipper demand a greater sum than $50 unless otherwise expressed or specially insured. The original receipt was introduced in evidence by the defendant, which contains the conditions of the contract attached to the answer, and upon which are the words, "Value asked, and not given," and also the memorandum, "Ordered returned by telegraph Apl. 2nd, /97." There was also offered in evidence the stipulation of the parties: "That on said day, March 31, 1897, said Adams Express Company did not have a through line from the city of New York to Dallas, Texas; that said Adams Express Company carried the merchandise described in the complaint to Kansas City, Missouri, and there, on April 2, 1897, delivered the same to the American Express Company, to complete the transportation to Dallas, Texas; that thereafter said American Express Company delivered said packages to said I. Goldsmith & Co. It is admitted that on April 2, 1897, said I. Goldsmith & Co. were insolvent, and unable to discharge their indebtedness in full, and thereafter, and prior to

June 10, 1897 (when payment for the goods was due), publicly declared their insolvency by the execution and delivery of a general assignment for the benefit of creditors, containing preferences." It was testified for the plaintiffs that their representative called at the express company's office, Canal and Mercer streets, at about 9 o'clock on April 2, 1897, and informed the young man there, who was an assistant, and the only person present, that the plaintiffs wished to have the goods stopped; and he went into an inside office, and on coming out said, "It is plenty of time; we can stop the goods," and asked if the plaintiffs would pay for a telegram to be sent, and, upon being told that they would, made out a telegram, which was at once sent, and paid for by the plaintiffs, and which read:

"New York, N. Y., 2nd Apl., A. D. 1897.

"To Agent Pac. Ex., Dallas, Texas:  Hence March thirty-first two packages I. Goldsmith & Co., return to shippers, Rosenthal & Co.          J. Williams."

Further it was testified that the express company never returned the merchandise, but the consignee, for reasons unconnected with the matter of insolvency or the notice to stop, returned two pieces of silk, valued at $37.41, and never paid for any part of the goods sent. The plaintiffs' shipping clerk testified, against defendant's objection and exception, that no request was made, when he shipped the goods, for a statement of the value thereof; that he did not read the fine print at the bottom of the receipt given, and did not know its contents. The defendant introduced in evidence a letter sent by the plaintiffs to it on April 13, 1897, stating that the merchandise was shipped on March 31st and on April 2d; request was made to telegraph that the goods were not to be delivered, which telegram, signed by J. Williams, was duly sent; that the consignee had returned two pieces, showing that the merchandise was delivered contrary to instructions; and that for any loss the shipper would expect to be compensated. Mr. McWilliams testified for the defendant that the young man referred to by the plaintiffs' witness was a stenographer, whose work did not extend outside such duties, and that he had not authorized the sending of the telegram to which his name was signed. Upon this evidence both parties moved for the direction of a verdict, and the defendant asked the court "to instruct the jury that in no event can the plaintiffs recover damages in excess of fifty dollars." The court declined so to instruct the jury, and directed a verdict for the full amount mentioned in the complaint, with interest thereon; and from the judgment entered upon the verdict so rendered the defendant appeals.

Argued before VAN BRUNT, P. J., and HATCH. PATTERSON. O'BRIEN, and INGRAHAM, JJ.

Carl A. De Gersdorff, for appellant.

Julius J. Frank, for respondents.

O'BRIEN, J.   Many questions sought to be raised as to the liability of a common carrier and to the extent to which such liability can be limited by contract we deem it unnecessary to discuss in view of the principles which we regard as controlling upon the facts here appearing. It is, of course, necessary, in the first instance, to determine whether the rights of the parties are controlled by the shipping receipt or by a separate and distinct contract or obligation. If under the former, then seemingly there would not only be need of proof of negligence, but, in the event of recovery, it is doubtful if the sum awarded could exceed the $50 fixed as the limit of liability. We are inclined, however, to the view that the rights and liabilities do not fail under the shipping contract.   What was intended by the provisions of the latter was to govern the liability of the defendant in all matters incidental to its undertaking as a common carrier in connection with the shipment from New York to Dallas, Tex., but

had no relation to the new and independent duty of returning the goods from some point on the line back to New York.

It is not disputed that while the goods were in transit the plaintiffs' right of stoppage existed; and, having notified the defendant that they proposed to exercise such right, there remains to be determined what obligation devolved upon the defendant, and whether or not such obligation was discharged. It being the duty of the defendant to recognize the plaintiffs' right of stoppage in transitu, the failure to perform that duty made the defendant liable. As said in 2 Schouler, Per. Prop. § 565:

"The effect of such notice, seasonably given, and sufficiently plain in expression, is to revest the seller's possession and lien; and the carrier is bound to obey, leaving the justification of the stoppage with the seller as concerns the sale parties, since the due exercise of this right is at the seller's option, and not the carrier's peril. The carrier is not to disregard the seller's claim, nor to undertake to solve the dispute between buyer and seller, nor to ask for evidence of the right; but to obey the seller's order implicitly, and thereupon refuse delivery to the buyer."

That the plaintiffs gave sufficient notice of their intention to exercise their right of stoppage in transitu, and in compliance with such notice defendant undertook to discharge its duty, appears from the evidence. The questions remaining are whether it properly discharged that duty, and, if it did not, what was the measure of damage to which it subjected itself by its failure. Upon the first we think that there was a prima facie case of negligence made out by the plaintiffs upon the showing that they notified the defendant, and that the defendant improperly performed that duty, a fair presumption being that, had the defendant sent a telegram to Kansas City, where the goods were to be reshipped by the American Express Company, it would have prevented such reshipment; or defendant might have taken other means to stop the goods before they reached Dallas, Tex. Considering what was to be accomplished, and the means in the defendant's hands for accomplishing it, it was for the defendant to rebut the inference thus created that it had neglected to use reasonable care. In other words, we think that the plaintiffs made out a prima facie case tending to show that the defendant had neglected to use reasonable care in performing the duty which it had undertaken. That the defendant was bound, after having assumed the duty, to use such care, we think follows from the obligation imposed; for, were it not for the agreement, the plaintiff might have resorted to other means, or employed other agencies, to prevent the delivery of the goods to the consignee.

At the close of the testimony neither side asked to go to the jury on any question of fact, but both moved for the direction of a verdict, thus submitting to the trial judge the determination of the disputed questions of fact, which determination, with sufficient evidence to support it, as herein appears, is conclusive upon us. The defendant did ask the court "to instruct the jury that in no event can the plaintiffs recover damages in excess of fifty dollars." This was asking the court to hold as matter of law that the shipping contract was conclusive as to the measure of damages. We have already intimated that the trial judge was right in refusing to concur in this view, and

that the rule to apply was that of compensatory damages. Under this rule the measure is what the plaintiffs lost, which was the value of the goods, less the amount returned. Two pieces of silk were returned, valued at $37.41, which sum should have been deducted from the total value of the goods originally shipped. There is no dispute about the value of the goods returned, and the trial judge, not having his attention called to them, inadvertently included this value in the amount for which the verdict was directed. That could have been corrected by motion, and at any time can be deducted, and no appeal was necessary for that purpose.

Having concluded that the plaintiffs were entitled to recover for the reasons set forth, it will be seen that the exceptions taken to the testimony of the plaintiffs' witness as to the receipt handed him are of no moment. We think, therefore, that the judgment was right, except in the particular referred to as to the value of the goods returned, which can be corrected, and should be affirmed, with costs. All concur; VAN BRUNT, P. J., in result.

VAN BRUNT, P. J. I concur in the result only. The defendant, having undertaken to stop the goods, was bound to use reasonable care to do so, and under the evidence this was a question for the jury. The defendant, not having asked to go to the jury, cannot now claim error because the case was not sent to the jury.